71 So.2d 15

**WINFREY et al. v. AUSTIN.**

**8 Div. 624.**

Supreme Court of Alabama.

March 11, 1954.

440

R. G. Kelton, Oneonta, for appellee.

John W. Brown and H. G. Bailey, Boaz, for appellants.

GOODWYN, Justice.

Ervin Austin, appellee, brought suit against J. J. Winfrey and his 17-year old son, Charles Winfrey, claiming damages for personal injuries allegedly resulting from the negligent operation by Charles of his father's automobile. There was a jury verdict against both defendants. This appeal is by both defendants from the judgment rendered on said verdict and from the judgment overruling their motion for a new trial.

Plaintiff was a tenant on the farm of defendant, J. J. Winfrey, and at times was employed by J. J. Winfrey to help about the farm. On the day he was injured, he was employed in hauling hay to a barn near J. J. Winfrey's home. Also engaged in this work were three sons of J. J. Winfrey, including the defendant Charles, and two other helpers. The hay was gathered in the field and loaded on a truck and carried to the barn. When the work of placing the hay in the barn was almost completed, there "came up a rain". Mr. Winfrey and two of his boys ran to the front porch of his home. All the others ran to the "shed", which was used to store Mr. Winfrey's tractor, truck and automobile. At the time, only the automobile was in the shed. On reaching the shed, plaintiff, the defendant Charles Winfrey, and the other two helpers sat down in that part normally occupied by the tractor. There were no partitions separating the shed into compartments. Short-

ly after getting to the shed, Charles told the others that he had some wine hid out, which he got and offered to the others. They tasted it with the statement that it was ruined, that it was sour. The wine was in a quart jar, not quite full. There was evidence that Charles drank about half of the wine. However, Charles testified that he only tasted it and then went outside and threw it away. Attention was then called to some lights and other automobile parts which were on a work bench about 6 or 8 feet in front of the automobile. A discussion ensued as to whether Charles would sell any of the lights or parts. Plaintiff and one of the others continued to examine the lights and parts, while Charles got into the automobile and turned on the radio. The ignition key was in the car. It was left there by J. J. Winfrey when he last used the car that morning. The hand brake was not on, nor was the car in gear. Charles attempted to start the motor but it went dead. On a second try he started it. He then pushed in the clutch and placed the car in gear. When he did, the car moved forward, pinning the plaintiff against the bench and causing the injuries complained of. During all of this time, the defendant J. J. Winfrey was sitting on his front porch. On hearing the screams from the shed, he ran there to see what had happened and assisted in moving plaintiff to the hospital.

We have not attempted to set out all of the evidence in detail, but only so much as we think necessary for a determination of the case.

The question for decision relates to liability of the father. No serious contention is made with respect to the son's liability.

The case went to the jury on counts 3, 4 and 5. In count 3 it is averred that "plaintiff was in the garage or tool shed belonging to the defendant J. J. Winfrey, which garage or tool shed was located at or near the residence of the defendant J. J. Winfrey, * * * at a time and place where plaintiff had a right to be, when at said time and place, Charles Winfrey, a minor son, servant, agent or employee of the defendant J. J. Winfrey, whilst acting within the line and scope of his family relationship, serv-

442

ant, agent or employee of said defendant, negligently ran an automobile belonging to defendant J. J. Winfrey upon, over or against plaintiff," causing the injuries complained of. It is further averred that plaintiff's injuries "were proximately caused by the negligence of the said Charles Winfrey whilst acting within the family relationship, agency, servitude or employment of the defendant J. J. Winfrey".

The negligence charged in count 4 is that the defendant J. J. Winfrey "permitted his minor son, viz: Charles Winfrey, a minor son of defendant aged about 17 years, to operate an automobile belonging to defendant J. J. Winfrey knowing at the time that the said Charles Winfrey was reckless, incompetent and negligent in operating automobiles, and knowing at the time that to permit his said minor son to operate said automobile, said minor son would likely cause said automobile to be run upon, over or against some person and injure said person" and that "by reason of the negligence of the defendant J. J. Winfrey in negligently permitting his minor son to operate said automobile, said minor son, viz: Charles Winfrey, negligently ran said automobile belonging to defendant J. J. Winfrey upon, over or against plaintiff," thereby causing the injuries complained of. It is also averred that plaintiff's injuries were "proximately caused by the negligence of the defendants as aforesaid".

The gravamen of count 5 is that "the plaintiff was an employee of the defendant J. J. Winfrey on a farm near Boaz, Marshall County, Alabama, when at said time and place, whilst the plaintiff was engaged in his employment by the defendant J. J. Winfrey, and was in or about the garage or tool shed of the defendant J. J. Winfrey, at a place where he had a right to be, the servant, agent or employee of the defendant J. J. Winfrey, viz: Charles Winfrey, a minor son of defendant, J. J. Winfrey, whilst acting within the scope of his agency, servitude or employment by J. J. Winfrey, negligently operated an automobile belonging to defendant J. J. Winfrey so as to cause the same to be run upon, over or against plaintiff, and as a proximate consequence of such negligence" plaintiff sustained his alleged injuries.

It is apparent that liability of the father is sought to be fixed under three separate theories, viz.: (1) the "family purpose" doctrine in the operation of automobiles (not adhered to in Alabama, as will be hereinafter shown); (2) permitting his son to operate the automobile, knowing him to be "reckless, incompetent and negligent in operating automobiles, and knowing at the time that to permit" him to operate said automobile, he "would likely cause said automobile to be run upon, over or against some person and injure said person"; and (3) the doctrine of respondeat superior.

■ *As to the first theory:* In order to show that there can be no recovery against the father on this theory, it is only necessary to observe that the "family purpose" doctrine is not followed in this jurisdiction. Tullis v. Blue, 216 Ala. 577, 578, 114 So. 185; Gardiner v. Solomon, 200 Ala. 115, 117, 75 So. 621, L.R.A.1917F, 380; Parker v. Wilson, 179 Ala. 361, 367–371, 60 So. 150, 43 L.R.A.,N.S., 87. See, also, the following: Bradley v. Ashworth, 211 Ala. 395, 396, 100 So. 663; Hudgens v. Boles, 208 Ala. 67, 93 So. 694; Beville v. Taylor, 202 Ala. 305, 306, 80 So. 370; Erlich v. Heis, 193 Ala. 669, 670, 69 So. 530; Powers v. Williamson, 189 Ala. 600, 603, 604, 66 So. 585; Armstrong v. Sellers, 182 Ala. 582, 585, 62 So. 28; Bates v. Kurtts, 36 Ala.App. 350, 352, 55 So.2d 864; Karrh v. Brown, 35 Ala.App. 308, 310, 46 So.2d 430.

■ *As to the second theory:* The applicable rule is thus stated in Gardiner v. Solomon, supra [200 Ala. 115, 75 So. 623]:

"While automobiles are not inherently regarded as dangerous instrumentalities, and the owner thereof is not responsible for the negligent use of same, except upon the theory of the doctrine of respondeat superior, yet there is an exception if he intrusts it to one, though not an agent or servant, who is so incompetent as to the handling of same as to convert it into a dangerous instrumentality, and the incompetency is known to the owner when permitting

the use of the vehicle. Parker v. Wilson, 179 Ala. 361, 60 So. 150, 43 L.R.A., N.S., 87; Daily v. Maxwell, 152 Mo. App. 415, 133 S.W. 351; Lynde v. Browning, 2 Tenn. C.C.A. [Higgens] 262; Allen v. Bland (Tex.Civ.App.) 168 S.W. 35."

For later cases approving this rule, see Salvation Army v. Security Roofing Co., 255 Ala. 349, 352, 51 So.2d 513; Spurling v. Fillingim, 244 Ala. 172, 175, 12 So.2d 740.

The only evidence which might be said to relate, even by inference, to the competency of Charles in operating an automobile is contained in the following portion of his testimony on cross-examination:

"Q. You drove the car for him? A. Well, when he was along most of the time.

"Q. Had he ever told you not to drive it? A. I knowed not to if he didn't tell me."

Plaintiff's insistence is that the foregoing shows that "defendant J. J. Winfrey, (by inference) knew that his son Charles was not a competent, safe and dependable driver". We cannot agree that this is sufficient to make a jury question of the father's knowledge of his son's incompetency as an automobile driver.

*As to the third theory:* We find no evidence that Charles was the agent of his father within the rule of respondeat superior. The relationship of parent and child does not of itself alone establish the fact of agency. As stated in Parker v. Wilson, supra [179 Ala. 361, 60 So. 151]: "The mere fact of paternity does not make the father liable for the torts of his minor child."

We think that J. J. Winfrey was entitled to the general affirmative charge, as requested by him in writing. Refusal of that charge calls for a reversal as to him. As to Charles Winfrey, the judgment is affirmed. With respect to the propriety of reversing as to one joint defendant and affirming as to the other, see City of Tuscaloosa v. Fair, 232 Ala. 129 (22), 137, 167

So. 276; Tullis v. Blue, 216 Ala. 577(8), 579, 114 So. 185, supra; Young v. Woodward Iron Co., 216 Ala. 330(11), 335, 336, 113 So. 223; Southern R. Co. v. Harris, 207 Ala. 534(5), 535, 93 So. 470; North Alabama Traction Co. v. Hays, 184 Ala. 592(3), 596, 597, 64 So. 39; Annotation, 143 A.L.R. 7, 15.

Reversed and remanded in part, and affirmed in part.

LAWSON, STAKELY and MERRILL, JJ., concur.